IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHELLE L. ALMANZA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:15-CV-389-TAV-HBG ) |
| JEFFERSON B. SESSIONS, III Attorney General, United States Department of Justice, | ) ) ) ) |
| Defendant. | ) ) |

## AGREED PRETRIAL ORDER

The parties, through counsel, submit this Agreed Pretrial Order pursuant to Section 5 of the Court's Scheduling Order and Fed. R. Civ. P. 16(d). This case is set for a jury trial on Monday, June 18, 2018. A final pretrial conference will be held on Monday, June 11, 2018, at 1:30 p.m. before the Honorable Chief U.S. District Judge Thomas A. Varlan. Attorneys Jennifer Morton and Maha Ayesh will represent Plaintiff Michelle Almanza. Special Attorneys, Assistant United States Attorneys Christopher Yates and Brandi M. Stewart will represent Defendant Jefferson B. Sessions, III, Attorney General, United States Department of Justice. The parties propose this Agreed Pretrial Order to govern the trial of this case:

**a) Jurisdiction**

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it involves federal questions under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff's claims of sex and age discrimination and retaliation arise under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a) and §2000e-3(a) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626, et seq. The parties do not contest the jurisdiction of the Court in this matter.

**b) Pleadings**

The pleadings are amended to conform to this Agreed Pretrial Order, to the extent that it is consistent with the Court's findings in its ruling on Defendant's Amended Motion for Summary Judgment (Doc. No. 37).

**c) Plaintiffs' Theory of the Case**

Plaintiff Michelle Almanza pursues claims against Defendant Department of Justice under Title VII of the Civil Rights Act of 1964, 2 U.S.C. §2000e, et seq, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626, et seq. She seeks relief for harm and loss caused by Defendant's actions subjecting her to a hostile work environment and pushing her out of her IT job at the U.S. Attorney's Office in the Eastern District of Tennessee (EDTN) because of her sex and age and because she spoke out against unlawful discrimination.

Michell Almanza worked as an IT Specialist for the U.S. Attorney's Office in the Eastern District of Tennessee from June 2008 until November 28, 2014. Specifically, Ms. Almanza was hired into the IT department in 2008 as the Assistant Systems Manager (ASM) and Case Manager. She enjoyed her work, was well-liked by co-workers, and received excellent performance reviews throughout her over 25 years of federal government employment. Knoxville was home to Ms. Almanza, who, in 2014, was raising children as a single mom and had extended family in the area. But her work environment had also become increasingly permeated with hostility after Chris English became her supervisor in 2012. After Mr. English hired a young male student, Robert Irving, in October 2012, Ms. Almanza noticed that Mr. English worked more closely with Irving, cut her out of communications, and assigned her duties

2

to Irving. Ms. Almanza periodically addressed this unequal treatment to English and to his supervisor, Jane Archer. Each report resulted in Mr. English intensifying his retaliatory scrutiny and criticism of her, as he obsessively documented minutia about Ms. Almanza, defensively stressed to her and others that she was not his peer, characterized any question or concern she expressed about work as a threat to his authority, and even refused to work alone with her.

By spring 2014, after Ms. Almanza complained that Chris English was setting her up for failure and giving her job duties to Irving, English set out on a plan to remove her as the Assistant Systems Manager and reassign her to a job that she did not want. When Ms. Almanza complained to English's supervisors about the hostile environment, instead of assisting Ms. Almanza, the Agency allowed English to implement his discriminatory and retaliatory plan to oust her. Behind the scenes, English and the Agency developed what English himself referred to as a "cover story" to justify their discriminatory and retaliatory actions against Ms. Almanza, including ways to rationalize changing her job description, hiring a young male contract worker into a full-time federal employee position so they could reassign Ms. Almanza to another position, and proceeding with disciplinary action against her. Chris English turned Ms. Almanza's workplace into an unbearably hostile environment in which he criticized everything she did, actively built a case for discipline against her, and made it almost impossible for her to do her job by isolating her, restricting her administrative access, and prohibiting her from assisting staff with IT needs. With Agency support, English continued to follow through with his plan to remove Ms. Almanza from her position as the Assistant Systems Manager, reassign her to a less desirable job, and make her miserable enough to leave.

By fall 2014, soon after Ms. Almanza filed a formal complaint of discrimination and retaliation, her treatment at work worsened, and she realized there was no hope for it to improve. In November, she very reluctantly left her home, her family, and the job she once loved for a

3

lateral transfer 700 miles away to a place she never wanted to live. English, with Agency support, intentionally drove Ms. Almanza out of the district because he preferred to work with younger male employees and because she complained about his discriminatory treatment of her compared to her younger male co-workers. Since driving Ms. Almanza away, English and the Agency have hired three full-time male IT specialists, resulting in an entirely male IT staff. None of these male employees have had to work under the restrictions and demands that English had placed on Ms. Almanza.

Ms. Almanza is now seeking relief for her harm and loss due to a hostile work environment and constructive discharge based on sex and age discrimination, and in retaliation for her protected activity.

  d) **Defendant's Theory of the Case**

Defendant unequivocally denies Plaintiff's claims in this lawsuit. Plaintiff served as an IT Specialist for the United States Attorney's Office for the Eastern District of Tennessee (the "District"), a component of the United States Department of Justice (DOJ), from June 8, 2008 until November 28, 2014, the date that Plaintiff decided to leave the District and become the Systems Manager for the United States Attorney's Office for the Western District of Wisconsin (WDWI), another component of DOJ.

In Plaintiff's own words, there was a personality conflict between her and her immediate supervisor, Mr. Christopher English. On January 29, 2012, Mr. English was hired as the new Systems Manager for the District, a position that Plaintiff also applied for, but did not receive. As the Systems Manager, Mr. English served as the head of the District's IT operations and was in charge of servicing the IT needs of the District's offices in Knoxville, Greeneville, and Chattanooga. The United States Attorney was concerned about the working relationship between

4

Plaintiff and Mr. English because Plaintiff was very disappointed that she did not get the Systems Manager's position with the District. From the end of 2012 throughout 2013, Plaintiff repeatedly showed a lack of civility toward Mr. English, often calling him names such as bipolar, idiot, idiot boy, twit, and making other derogatory comments about him to others inside and outside of the District.

By the end of 2012 and into the beginning of 2013, Ms. Jane Archer, the Administrative Officer for the District and Mr. English's first-level supervisor, met with Mr. English and Plaintiff on several occasions to address the communication issues between them. The record reflects that the communication issues between Plaintiff and Mr. English in 2012 and 2013 evidence a personality conflict between them, not discrimination, retaliation, or harassment.

During their meetings with Ms. Archer, Mr. English grew concerned that Plaintiff was not being completely honest about their interactions. As a result, Mr. English began documenting all of his interactions with Plaintiff through "memos for record" because—as he stated in several memos drafted contemporaneously with their dispute—he did not trust Plaintiff, not because she was a woman, over the age of 40. Plaintiff acknowledges that her working relationship with Mr. English was largely without issue throughout the rest of 2013, until spring 2014.

In spring 2014, Plaintiff again complained to Ms. Archer about their communication issues. Ms. Archer took several steps in an effort to monitor and streamline their communications. In doing so, Ms. Archer observed that Plaintiff contributed to the very communication issues about which she complained. In May 2014, Ms. Archer met with Plaintiff to discuss several of her emails in an effort to explain to Plaintiff how her emails were argumentative, insubordinate and demeaning.

Shortly thereafter, in June 2014, Plaintiff sent an email to Ms. Archer and Ms. Nancy

5

Case 3:15-cv-00389-TAV-HBG   Document 96   Filed 06/18/18   Page 5 of 13   PageID #: 5102

Harr, who served as the First Assistant United States Attorney and Ms. Archer's immediate supervisor, stating, for the first time, that she wanted out of the alleged "hostile" situation between her and Mr. English. Upon seeing the word "hostile," management immediately reached out to the Executive Office for United States Attorneys, General Counsel's Office ("GCO") to seek additional guidance on how to address the situation between Plaintiff and Mr. English. On July 2, 2014, Ms. Archer and Ms. Harr held a meeting with Plaintiff to discuss potential solutions to the issues between Plaintiff and Mr. English. Ultimately, the District did not get an opportunity to make a final decision on how best to proceed before Plaintiff filed an EEO claim and decided to leave the District.

On a completely separate track, Mr. English expressed his frustrations to Ms. Archer that Plaintiff was allowed to be insubordinate and demeaning to him without consequence, and he provided several examples where he felt Plaintiff's conduct warranted action, particularly Plaintiff's May 2014 correspondence with him. After presenting these concerns to Ms. Archer, Mr. English was directed to work with GCO on the appropriate action. On July 17, 2014, Mr. English issued a Letter of Reprimand to Plaintiff for insubordination. Plaintiff grieved the Letter of Reprimand to Ms. Archer, who upheld the discipline and identified legitimate non-discriminatory reasons for doing so. Plaintiff was not disciplined because of her sex, age, or in retaliation for complaining about Mr. English. Plaintiff was disciplined for her own acts of insubordination.

Plaintiff initiated informal EEO counseling on July 30, 2014. That same day, Ms. Harr circulated an email to the IT staff indicating that WDWI needed IT assistance, and, within minutes, Plaintiff responded expressing her desire to assist, which was granted by the District. Plaintiff traveled to Wisconsin to assist WDWI with their IT needs from August 5, 2014 to

August 10, 2014. When she returned to the District, Plaintiff informed Ms. Harr that she had a "wonderful experience."

On or about September 10, 2014, Plaintiff filed her formal EEO complaint against the District. Plaintiff also applied for, and received, the Systems Manager's position at WDWI, a title upgrade; her pay and benefits remained the same. Plaintiff's ultimate decision to leave the District was her choice, she was not constructively discharged.

Currently, Plaintiff is still employed with Defendant as an IT Specialist with the Northern District of Georgia making $97, 606 as a GS-12-Step 9, more than her salary at the Eastern District of Tennessee, which was $85,711 at the time of her departure. Since Plaintiff's departure, two female contractors and three IT specialists have worked in the District's IT group. Notably, Mr. English has not experienced any of the challenges that he experienced with Plaintiff with any of the employees who have joined the District since Plaintiff's departure.

**Issues to be Submitted to the Trial Judge and Jury**:

    **Issues for the Trial Judge**:

    1) If the jury finds in favor of Michelle Almanza, this Court must determine whether reinstatement is desirable and feasible, or whether the jury should determine an appropriate amount of front pay to award to Ms. Almanza.

    2) If the jury finds in favor of Michelle Almanza, this Court must determine whether she is entitled to an award of attorneys' fees, costs, and interest, and the amounts of any such award.

    **Issues for the Jury**:

    3) Whether Ms. Almanza established her sex-based claim of hostile work environment?

4) Whether Ms. Almanza established her age-based claim of hostile work environment?

5) Whether Ms. Almanza established her retaliation-based claim of hostile work environment?

6) Whether Ms. Almanza established her sex-based claim of constructive discharge from the U.S. Attorney's office in East Tennessee

7) Whether Ms. Almanza established her age-based claim of constructive discharge from the U.S. Attorney's office in East Tennessee.

8) Whether Ms. Almanza established her retaliation-based claim of constructive discharge from the U.S. Attorney's office in East Tennessee?

**Damages**: If the jury finds in favor of Michelle Almanza on any of her claims, it must determine what damages she may recover as follows:

9) Whether Ms. Almanza is entitled to recover damages for backpay, lost earnings, and expenses, and if so, in what amount?

10) If the Court determines that front pay is appropriate, then what amount of front pay will reasonably compensate Ms. Almanza for future economic loss?

11) Whether Ms. Almanza is entitled to compensatory damages, including for pain and suffering, inconvenience, mental anguish, emotional distress, loss of enjoyment of life, and other non-economic losses, and if so, in what amount?

12) Whether Ms. Almanza mitigated her damages, to include whether the salary, leave, performance awards, and other benefits that Ms. Almanza continued to receive from the United States Department of Justice should offset any portion of her award for monetary relief.

**Stipulations of Fact**

1. Michelle Almanza, born 1972, began working for the federal government in 1990. She was hired as an IT Specialist in the United States Attorney's Office for the Eastern District of Tennessee on June 8, 2008, as a GS-12, step 4.

2. Ms. Almanza worked in the United States Attorney's Office for the Eastern District of Tennessee until November 28, 2014.

3. From November 30, 2014 until June 25, 2017, Ms. Almanza worked in the United States Attorney's Office for the Western District of Wisconsin. When she joined the Western District of Wisconsin she was referred to as the Systems Manager.

4. From June 25, 2017 to the present, Ms. Almanza has worked in the U.S. Attorney's Office for the Northern District of Georgia.

5. At all times while employed as an IT Specialist for the United States Department of Justice, Ms. Almanza's pay grade has been GS-12, and her step level (or within-grade increase), has increased from step 4 to step 9.

6. Ms. Almanza's immediate supervisor when she began working in the Eastern District of Tennessee in 2008 was Karen Minser. Ms. Minser's official job title was Supervisory Information Technology ("IT") Specialist, but she was commonly referred to as the Systems Manager. Ms. Minser retired from the Eastern District of Tennessee, effective June 30, 2012.

7. Mr. Christopher English began working for the federal government in 1989. He became Ms. Almanza's immediate supervisor on January 29, 2012, when he was hired to replace Ms. Minser as the Supervisory IT Specialist. Ms. Almanza also applied for Ms. Minser's position but was not selected.

9

8. Mr. English is referred to as the Systems Manager for the Eastern District of Tennessee. Mr. English's pay grade was GS-13, step 8 when he joined the District. His pay grade is currently GS-13, step 10.

9. Mr. English's immediate supervisor was Administrative Officer Jane Archer. Ms. Archer left the Eastern District of Tennessee, effective August 24, 2014. Ms. Archer retired from federal service on August 31, 2015.

10. After Ms. Archer left the Eastern District of Tennessee in August 2014, then-First Assistant United States Attorney Nancy Harr also became the Acting Administrative Officer for the Eastern District of Tennessee. As the Acting Administrative Officer, Ms. Harr served as Mr. English's immediate supervisor, and she served in these dual positions until after Ms. Almanza left the Eastern District of Tennessee.

11. Mr. William Killian served as the United States Attorney for the Eastern District of Tennessee from October 4, 2010 to December 5, 2015.

12. Currently, Mr. English's immediate supervisor is Connie Moody. Ms. Moody was hired to replace Ms. Archer as the Administrative Officer for the Eastern District of Tennessee and began working in that role on February 22, 2015.

13. On October 29, 2012, Robert Irving, born 1983, was hired as an IT Student Trainee in the Eastern District of Tennessee. Mr. Irving continued to work in that position until May 2016, when he resigned. Mr. Irving's pay grade was GS-01, step 1when he first began in this position. When he left this position, Mr. Irving was a GS-05, step 2.

14. On February 11, 2013, Ms. Amber J. Hensley, born in 1990, was hired as an IT Student Trainee in the Eastern District of Tennessee. Ms. Hensley's pay grade was GS-02, step 1. Ms. Hensley resigned from the Eastern District of Tennessee on July 5, 2013. Her pay

grade was GS-02, step 1 when she resigned.

15. On February 24, 2013, Shannon Mann, born 1990, was hired as a Student Trainee (Clerical) and worked with the IT staff. Ms. Mann's pay grade was GS-02, step 1, when she first began her position. She resigned from the Eastern District of Tennessee on July 19, 2013. Her pay grade was GS-02, step1 when she resigned.

16. On September 30, 2013, William Heckman, born in 1987, a contractor with BAE Systems, was assigned to work with the Eastern District of Tennessee in the Chattanooga branch office. On February 22, 2015, Mr. Heckman was hired by the Eastern District of Tennessee as an IT Specialist, with a pay grade of GS-05, step 1. He currently works as a GS-9, step 2.

17. On November 18, 2014, Alisha Mainer, born 1990, a contractor with BAE Systems, was assigned to work with the Eastern District of Tennessee in the Greeneville branch office. Ms. Mainer worked at the Greeneville office until she resigned on May 20, 2016. Ms. Mainer joined the office again as a contractor from July 5, 2016 to June 30, 2017 based in the Knoxville office. She resigned from the Eastern District Tennessee Office on June 30, 2017.

18. On May 31, 2016, Bryan Brandenburg, born 1983, was hired as an IT Specialist in the Knoxville branch office of the Eastern District of Tennessee, with a pay grade of GS-11, step 1. Mr. Brandenburg filled the full-time equivalency (FTE) position vacated by Ms. Almanza. He currently works as a GS-11, step 2.

19. On January 22, 2017, David Woodward, born 1976, was hired as an IT Specialist in the Knoxville branch office of the Eastern District of Tennessee, with a pay grade of GS-12, step 10. He currently works as a GS-12, step 10.

20. Ms. Almanza contacted the United States Department of Justice's Equal Employment Opportunity office to file her Pre-Complaint of Discrimination on July 30, 2014.

21. Ms. Almanza performed District Assistance at the Western District of Wisconsin from August 6, 2014 to August 15, 2014.

22. The Equal Employment Opportunity office counselor assigned to Ms. Almanza's complaint contacted William Killian, the United States Attorney for the Eastern District of Tennessee on August 18, 2014 to discuss her allegations.

23. Ms. Almanza filed a formal Complaint of Discrimination on September 10, 2014.

24. Ms. Almanza's last day with the United States Attorney's Office in the Eastern District of Tennessee was November 28, 2014.

### e) Novel or Unusual Questions of Law or Evidence

Defendant's motion for summary judgment is still pending before this Court. The summary judgment briefings discuss the law, and each party has filed or will file motions in limine regarding various evidentiary issues. Other than these pending issues, the parties do not believe this case presents any novel or unusual questions of law or evidence.

### f) Estimated Length of Trial

The parties estimate the trial will last four to five (4-5) working days.

### g) Possibility of Settlement

The parties believe the case is suitable for mediation but have not mediated the case pursuant to Local Rule 16.4. The parties have a private mediation scheduled for June 4, 2018.

### h) Miscellaneous matters that may contribute to the just, speedy, and inexpensive determination of the case.

The parties are unaware of any additional matters that may contribute to the just, speedy, and inexpensive determination of the case.

Respectfully submitted this 21st day of May, 2018.

APPROVED FOR ENTRY BY:

JEFFERSON B. SESSIONS III,
ATTORNEY GENERAL,
UNITED STATES DEPARTMENT
 OF JUSTICE
BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY

 s/ Christopher R. Yates
 CHRISTOPHER R. YATES (0064776)
 Special Attorney
 Assistant United States Attorney
 303 Marconi Blvd., Suite 200
 Columbus OH  43215-2326
 Phone: (614) 469-5715 Fax: (614) 469-5240
 christopher.yates@usdoj.gov

 s/ Brandi M. Stewart
 BRANDI M. STEWART (0082546)
 Special Attorney
 Assistant United States Attorney
 200 West 2nd Street, Suite 600
 Dayton, OH 45402
 Phone: (937) 225-2910
 brandi.stewart@usdoj.gov

 ATTORNEYS FOR DEFENDANT

s/ Jennifer B. Morton
Jennifer Morton, BPR#015585
Maha M. Ayesh, BPR #025244

Jennifer Morton Law, PLLC
8217 Pickens Gap Road
Knoxville, TN  37920

(865) 579-0708
ATTORNEYS FOR MICHELLE ALMANZA

**ENTER:**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE