IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICHELLE L. ALMANZA, | ) | |
| | ) | |
| Plaintiff, | ) | CIV NO. 3:15-cv-389 |
| | ) | (VARLAN/GUYTON) |
| v. | ) | |
| | ) | |
| JEFFERSON B. SESSIONS III, | ) | |
| Attorney General, | ) | |
| United States Department of Justice, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO LIFT STAY
AND RE-OPEN DISCOVERY**

Plaintiff, Michelle L. Almanza, through counsel, hereby replies to the objections filed by

Defendant Department of Justice (DOJ) [Doc. 124] in response to her Motion to Lift Stay and

Re-Open Discovery [Doc. 122].

A.  Defendant's Time Records are Relevant

Defendant first argues that the Court should not allow discovery of Defendant's time

records because those time records may not be itemized by task.  Defendant does not specifically

dispute that its attorneys and legal staff who worked on this case kept contemporaneous records

of time spent on the case, but rather claims that legal staff *are not required* to specify the tasks

they performed and *may* have reported time spent by "case type" rather than by the specific case

name.  Defendant requested to file a supplement and declaration on October 29, 2018, estimating

that only 15% of Assistant U.S. Attorneys specifically identify the case name on which they

work when recording their time in the USA-5 database. [Doc. 125, PageID#6311.]  Notably,

1

Defendant has not asserted that DOJ counsel and staff who worked on this case in fact recorded time only by case type rather than case name. Despite its assertions, however, Defendant's time records remain relevant and would be helpful in this Court's determination of Ms. Almanza's request for attorneys' fees and expenses.

First, Defendant's unilateral representations about how staff *may* have reported their time does not make Defendant's time records irrelevant.  Just because DOJ employees may sometimes combine time spent on more than one case in a single time entry, or do not always specify the case they are working on, does not mean that this happened with any regularity in this case.  Similarly, Defendant's assertion that its employees *are not required to* specify in time records the tasks on which they worked does not necessarily mean that employees never specified their tasks.[1]  For example, Defendant filed an affidavit in this case in September 2017 by Michelle Mullinix, DOJ's Forensic and Investigations Program Manager. [Doc. 17-2] In her affidavit, she testifies that two contractors spent 200 hours each and she spent 456 hours and 57 workdays within three months responding to discovery requests in this case. [Doc.17-2, ¶¶10-11] Clearly, Ms. Mullinix and the contractors recorded time specifically to this case by name. Denying the opportunity to take discovery based on Defendant's representations would unfairly allow Defendant the upper hand in determining what is and is not relevant for purposes of discovery.  *Cf., Bobo v. UPS*, 665 F.3d 741, 753 (6th Cir. 2012) (reversing district court and discussing danger in allowing defendants to control discovery by unilaterally selecting what records are relevant to plaintiff's requests).

---

[1] Defendant has offered the declaration of the Assistant Director of Data Integrity and Analysis Staff to describe how USA-5 is *typically* used and what kind of information is *typically* reported but has not offered declarations from the attorneys of record in this case about how they actually used USA-5 and whether they actually specified cases and/or tasks when they recorded their time.  [*See* Doc. 125-1.]

Moreover, even if DOJ staff who have worked on this case have not always specified tasks in their time entries, their records are dated and, when considered in conjunction with the case history and Plaintiff's attorneys' itemized statements, would provide evidence of what tasks were being performed. For example, it would be reasonable to infer that time entries on or near the time of a Court filing, such as Defendant's dispositive motion or response to a motion by Plaintiff, were related to those filings. Entries dated immediately before and during scheduled depositions would almost assuredly be related to those depositions. Time logged in the weeks before and during trial would reasonably be considered time spent on trial preparations and could be compared with the time spent by Ms. Almanza's counsel in those same weeks.

Defendant's time records are relevant even if they simply allow the parties to glean an approximation of time spent by Defendant during particular time periods. In comparing time spent by Plaintiff's and Defendant's legal teams, the question is not one of "fee parity" or, as stated by Defendant, an exact "apples to apples" comparison, because courts recognize that several factors may affect how much time one party spends on a particular task or particular case as compared to the other party. *Serricchio v. Wachovia Securities, LLC*, 258 F.R.D. 43, 46 (D. Conn. 2009). One party spending more time on a task or case than the other party is not necessarily an indication that the party's time is unreasonable, but when a defendant alleges that the plaintiff's fee request and overall time billed is excessive or exorbitant, "a comparison of each side's records may aid the Court in divining the reasonable fees and costs to be awarded in this case." *Id. See also Henson v. Columbus Bank & Tr. Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While the concerns … regarding the relevancy of evidence of the other side's hours and fees are still prevalent, the trial judge may consider them as going to the weight of the evidence rather than its discoverability and admissibility.")

B. **Plaintiff's Request for Discovery is Timed to Avoid Unnecessary Delay in Reaching a Final Resolution in This Case.**

Defendant next argues that Plaintiff's request for discovery is premature because whether Defendant's time records are relevant depends on the arguments Defendant makes in opposition to Plaintiff's motion for fees. It may be true in some cases that the relevance of the opposing party's time records cannot be ascertained until that party has stated its opposition to a motion for fees, but this is not true here. In this case, Plaintiff and Defendant have engaged in post-trial mediation, and through that process have asserted their respective positions on Plaintiff's attorneys' fees. Plaintiff shared with Defendant an accounting in early August of her attorneys' time spent to date.[2] Defendant strongly objected to paying any sum even remotely close to the amount of fees and expenses requested by Plaintiff, labeling the request as excessive and disproportionate to the claims made and results achieved in this case. Ultimately, the parties were able to settle all pending claims except for attorneys' fees and costs. Contrary to Defendant's statement in its response brief, Plaintiff's current motion to re-open discovery is not simply based on conjecture regarding Defendant's objections to her "unseen" request for fees. [Doc. 124, PageID #6305.]

The only way Defendant's time records would be irrelevant is if Defendant does not object to the amount of time Plaintiff's counsel has spent on the litigation. It is a certainty, however, that Defendant will object to Plaintiff's impending motion for fees and costs.

_____

[2] Prior to mediation, DOJ counsel asked plaintiff's counsel to avoid incurring additional attorneys' fees while the parties attempted to resolve all remaining issues through mediation. Plaintiff's counsel honored that request. At mediation, plaintiff's counsel allowed DOJ counsel an opportunity to review the firm's raw time records as evidence of the total hours invested and the detailed nature of the specific task descriptions. Plaintiff's counsel did not allow DOJ counsel to make copies or notes because the time records contained unredacted attorney client privileged information and work product, and the records had not been carefully reviewed for inadvertent errors or edited for business judgment adjustments, which is a time-consuming project on such lengthy time records.

4

Otherwise, fees and costs would have been included in the settlement that the parties have already reached. It is just as certain that Defendant will object to the amount of time billed, not simply to the hourly rates proposed by Plaintiff's counsel.[3]

Moreover, Defendant has not asserted that responding to Plaintiff's proposed discovery requests would be unduly burdensome or prejudicial. Rather, Defendant acknowledges that its legal staff has kept records of its time spent in a database from which reports can be generated. Given this lack of burden or prejudice, combined with the certainty that Defendant will oppose Ms. Almanza's motion for attorneys' fees and expenses and that attorneys' fees and expenses are the only remaining issues to be resolved in this case, Plaintiff's request for discovery now is the most efficient and expedient way to obtain a final resolution to this dispute. An alternative timeline would require Plaintiff to wait to ask the Court's permission to conduct discovery after both she and Defendant have filed their initial briefs on this issue. The case would then be delayed while the Court decides whether to allow discovery, and then, if the Court does allow discovery, while the Defendant is given time to respond to the discovery requests. Plaintiff would file her reply brief addressing Defendant's objections to her request for fees and expenses only after those delays.[4] Instead of that delayed schedule, Ms. Almanza has requested leave to re-open discovery before initial briefings have been completed to allow the discovery process to take place while the parties are engaged in briefing. As this issue is the one remaining issue to

---

[3] For purposes of compromise, during mediation, Plaintiff offered Defendant the benefit of calculating her attorneys' fees based on her attorneys' hourly rates adopted by this Court a year earlier in *EEOC v. DolgenCorp,* LLC, 3:14–CV–441. Defendant did not indicate that its objection to the amount of fees requested by Plaintiff was based on the hourly rates offered at the time; rather, it objected to the reasonableness of time spent.

[4] Plaintiff prepared the specific discovery requests and attached them to her motion to avoid further delay by clarifying the limited scope of the requested discovery, and by allowing Defendant the opportunity to object now rather than interrupt the briefing schedule later.

be decided by this Court, a delay in resolving Plaintiff's motion for attorneys' fees and costs would mean a delay in obtaining a final judgment by the Court. Plaintiff is not trying to turn the contest over fees into a "second major litigation" [Doc. 124, PageID #6306 ¶9]; rather, she is trying to do the opposite by speeding along the process toward a final resolution of the case.

C. Defendant's Time and Expense Records Related to Ms. Almanza's Whistleblower Retaliation Claim are Relevant and Proportional.

Defendant's final objection to Ms. Almanza's motion to re-open discovery is an objection to one of the three proposed interrogatories and one of the three proposed requests for production of documents—those which request records related to Ms. Almanza's complaints to the Office of Special Counsel (OSC) and Merit Systems Protection Board (MSPB) proceedings. Defendant asserts that because those administrative proceedings were separate from the present case, that any time spent on those proceedings is irrelevant. Defendant both mischaracterizes the connection between the two proceedings and misunderstands the relevance of its own records related to those proceedings.

Ms. Almanza has alleged that she was the victim of retaliation, hostile work environment, and constructive discharge while working as an IT Specialist at the U.S. Attorney's Office in the Eastern District of Tennessee. The claims that were heard before this Court, and which went to trial in June 2018, involved retaliation in response to Ms. Almanza's complaints of sex and age discrimination under Title VII and the ADEA. Ms. Almanza also pursued a separate, but related, case, first in complaints to the OSC and then through proceedings with the MSPB, alleging that the retaliation, hostile work environment, and constructive discharge she suffered were also in response to her complaints about her supervisor's waste of federal resources and fraud. Based on the interrelated facts and issues between the two proceedings, and for judicial economy, the Department of Justice proposed, and Ms. Almanza agreed, to a stay of her MSPB case pending

resolution of the present case. After Ms. Almanza obtained a jury verdict in her favor in this case, her pending whistleblower retaliation claims before the MSPB were resolved through negotiation as reflected in the settlement agreement filed in this Court. [Doc.119-1]

Plaintiff's Title VII and ADEA retaliation claims in this Court and the whistleblower retaliation claims with the MSPB involve largely the same set of facts, including the exact same retaliatory acts alleged in both actions for which separate proceedings are required based on the asserted improper motivation for those retaliatory acts. Although Plaintiff's counsel here did not enter an appearance in the MSPB case, she monitored, advised, and negotiated on Ms. Almanza's behalf with respect to the MSPB case as necessary to protect the Title VII and ADEA claims and to facilitate a resolution of all interrelated claims. Maintaining the separate MSPB case ultimately aided in the successful post-trial resolution of the present case in Ms. Almanza's favor, including agreement from Defendant to pay her three times what she was awarded by the jury for her Title VII retaliation action. The Supreme Court has indicated that attorney fees may be awarded for extra-judicial activities, including *optional* or post-trial administrative procedures, that are sufficiently connected to the court action that is subject to the relevant statutory fee-shifting provision. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986), *supplemented*, 483 U.S. 711 (1987) (citing *Webb v. Board of Ed. of Dyer County*, 471 U.S. 234, 243 (1985)) ("for the time spent pursuing optional administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation").

What matters to the present discussion, however, is the relevance of Defendant's counsel's—not Plaintiff's counsel's—records of time spent on the MSPB whistleblower

retaliation case. In the MSPB proceedings related to whistleblower retaliation, Defendant has been represented by DOJ attorney Robin Fields. Although Ms. Fields is not counsel of record for Defendant before this Court, she was DOJ's counsel for the EEO administrative proceedings and was heavily involved in this District Court litigation, appearing, for example, at depositions, at the parties' initial mediation in June 2018, and throughout trial. Thus, time spent by Ms. Fields and other legal staff related to the present litigation may be recorded as part of the separate (but simultaneous) MSPB whistleblower retaliation case for which she is counsel of record. It would be impossible to obtain an accurate accounting of time spent by DOJ staff on this case without also viewing time records of DOJ staff attributed to the related MSPB case. For example, DOJ produced 19,000 pages of documents in this case, including OSC documents, all of which are relevant to both proceedings. DOJ staff such as Robin Fields may have recorded time spent reviewing the common set of documents to either this case or the MSPB case. Simply stated, the primary reason Plaintiff is requesting records related to the MSPB matter is to ensure a complete recording of time spent by defense counsel on this judicial proceeding.

CONCLUSION

For the reasons explained above and as stated in Plaintiff's Motion to Lift Stay and Re-Open Discovery, Ms. Almanza asks that, in lifting the stay set by the Court on July 27 [Doc. 116; Doc. 121 (10/5/18 Order continuing stay)], the Court also permits her to serve the proposed discovery requests on Defendant. The requests relate solely to the time and expense invested by DOJ defending this case as relevant to determining the reasonableness of the time and expense invested by Plaintiff in successfully pursing her retaliation claims. To the extent that the Court agrees with Defendant that Plaintiff's motion is premature, Plaintiff requests that her motion be

8

denied without prejudice so that she can renew the motion at a later date.[5] Plaintiff also asks the Court to enter a briefing schedule to be determined at the hearing on this motion scheduled for Wednesday, October 31, 2018.

Respectfully submitted,

*s/Jennifer B. Morton*
Jennifer B. Morton
Maha M. Ayesh
JENNIFER MORTON LAW, PLLC
8217 Pickens Gap Road
Knoxville, TN 37920
(865) 579-0708
jen@jmortonlaw.com
maha@jmortonlaw.com

Attorneys for Plaintiff Michelle Almanza

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*s/ Jennifer B. Morton*
Jennifer B. Morton

---

[5] If this Court denies Plaintiff's motion to reopen discovery, Plaintiff further asks the Court to reject Defendant's request that fees be denied to Ms. Almanza for time spent drafting discovery requests pursuant to this motion. [Doc. 125, fn 1.] *See, e.g., White v. Imperial Adjustment Corp.,* Civ.A. 99-3804, 2005 WL 1578810, at *11 (E.D. La. June 28, 2005) ("[Plaintiff] should not be penalized for every unsuccessful procedural motion or opposition; simply because [Plaintiff] lost a motion does not mean that her position was frivolous. Plaintiff's attorneys are obligated to represent their clients zealously, and the Court will not second-guess every unsuccessful strategic decision of plaintiff's counsel during this litigation.)

9